1  Deval R. Zaveri (CA 213501)
2  James A. Tabb (CA 208188)
   ZAVERI TABB, APC
3  402 West Broadway, Suite 1950
   San Diego, California 92101
4  Tel:  (619) 831-6988
5  Fax: (619) 239-7800
   dev@zaveritabb.com
6  jimmy@zaveritabb.com

7  Matthew C. Klase (CA 221276)
8  WEBB, KLASE & LEMOND, LLC
   1900 The Exchange, S.E., Suite 480
9  Atlanta, Georgia 30339
   Tel:  (770) 444-0998
10 Fax: (770) 217-9950
11 Matt@WebbLLC.com

12 Attorneys for Plaintiff ECO FARMS INVESTMENTS
13 HOLDINGS, LLC, and the Putative Classes

14        **UNITED STATES DISTRICT COURT**

15 **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

16 | ECO FARMS INVESTMENTS | ) | Case No.: 18-cv-1339 |
17 | HOLDINGS, LLC, a California | ) | |
   | Limited Liability Company, on behalf | ) | **CLASS ACTION COMPLAINT** |
18 | of itself and all others similarly | ) | |
19 | situated, | ) | (1) Tortious Fraud and Intentional Deceit |
   | | ) | (2) Actual Fraud |
20 | Plaintiff, | ) | (3) Negligent Misrepresentation |
21 | vs. | ) | (4) Violation of Unfair Competition Law |
   | | ) | (5) Breach of Contract |
22 | BALBOA CAPITAL | ) | (6) Breach of Good Faith and Fair |
   | CORPORATION, a California | ) | Dealing |
23 | Corporation, | ) | |
24 | Defendant. | ) | **JURY TRIAL DEMANDED** |
   | | ) | |
25

1

Plaintiff ECO FARMS INVESTMENTS HOLDINGS, LLC ("ECO"), on behalf of itself and those similarly situated, alleges the following based on personal knowledge as to all allegations regarding ECO and on information and belief as to other allegations:

## NATURE OF THE CASE

1.     This is a civil action seeking monetary damages, restitution, and injunctive relief from and against Defendant BALBOA CAPITAL CORPORATION ("Defendant" or "BALBOA") arising from its misleading, unlawful, and unfair business conduct in connection with the financing of commercial equipment purchases.

2.     Small and mid-size businesses often lack substantial capital resources needed to fund major business expenses, so they rely on financiers such as BALBOA to help cover the upfront cost of equipment used to conduct their business.

3.     BALBOA utilizes sales agents to "cold call" business owners to market BALBOA's equipment financing products.  It also promotes its services via traditional marketing and advertising, referrals, and online and social media outlets.  After a business owner expresses interest in BALBOA's services, the sales agent prepares a quote and sends it to the business's point of contact. BALBOA's sales agents are trained to set BALBOA's products apart from its many competitors' by quoting quarterly payments instead of interest rates.

4.     BALBOA quotes seemingly reasonable payment schedules to prospective customers in order to remain competitive with the many other financing companies in the industry.  However, BALBOA does not disclose its intention to maximize the amount of money it charges before it considers a loan to

2

be "commenced." Instead, it charges payments from its customers disguised as agreed-upon payments and delays the "commencement" of a loan – a deviation from the industry standard practice, and a fact not disclosed to loan applicants. BALBOA's scheme is completely outside of any norms in the modern lending business. Unsurprisingly, BALBOA's unorthodox scheme results in BALBOA collecting a windfall of undisclosed pre-commencement payments.

5.     Business owners duped by BALBOA's misleading, unlawful, and unfair bait-and-switch practice end up paying substantially more for their loans than they would under standard practices. In ECO's case, it was quoted a loan payment schedule of 12 quarterly payments of a set dollar amount, which under standard practice would have resulted in approximately $8,587.15 in interest over a 3-year loan term; but under BALBOA's scheme, ECO would pay approximately $54,587.00 in interest – more than six times the amount quoted and agreed upon.

6.     ECO brings this action on behalf of two classes of similarly situated customers to end BALBOA's deceptive, unlawful, and unfair practice; and to recover money paid to BALBOA that would not otherwise have been paid but for BALBOA's malfeasance and breach of contract.

## PARTIES

7.     Plaintiff ECO FARMS INVESTMENTS HOLDINGS, LLC is a California limited liability company with its principal place of business at 28790 Las Haciendas, Temecula, California 92590. It currently owns a specialized truck financed by BALBOA.

8.     Defendant BALBOA CAPITAL CORPORATION is a California corporation. BALBOA's principal place of business is 575 Anton Boulevard, 12th Floor, Costa Mesa, California 92626. BALBOA also has regional offices

3

throughout the Western United States and markets itself as a lender utilizing online sales and applications.  BALBOA started as exclusively an equipment leasing business; however, today it offers various commercial financing products, such as franchise financing and business cash advances.  BALBOA can be served via its registered agent for service of process, Registered Agent Solutions, Inc.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 potential class members and the aggregate amount in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one class member is a citizen of a state other than California.

10.    This Court has personal jurisdiction over BALBOA because it is a corporation incorporated under the laws of the State of California.  Moreover, BALBOA's principal place of business is in Costa Mesa, Orange County, California.  Further, BALBOA is engaged in a continuous and systematic course of doing business in California by offering its services to thousands of California customers.

11.    Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) because BALBOA has its principal place of business in this district.  Moreover, BALBOA's form "Equipment Financing Agreement" (Exh. A hereto) and "Hold Harmless Letter Agreement" (Exh. B hereto) with Plaintiff and the members of the classes require the application of California law and specify that the courts of Orange County, California are a proper venue.

///

///

4

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

## FACTUAL ALLEGATIONS

12.     In April 2017, ECO received a "cold call" from BALBOA agent Ryan Gray marketing BALBOA's equipment financing products.  Coincidentally, ECO was in the market to purchase a commercial Freightliner truck that was estimated to cost $127,279.60 at a Freightliner dealership.  ECO preferred to finance the purchase as ECO often does for major equipment purchases needed for its farming operations.  ECO discussed its needs and BALBOA's financing products with Mr. Gray.

13.     BALBOA offered to fully finance the purchase of the truck over a three-year period  ECO could take possession and ownership of the truck immediately and make 12 quarterly payments of $11,400.00 to BALBOA.  At BALBOA's suggestion, the financing agreement was originally put in the name of ECO entity Eco Farms Sales, Inc., but was later substituted with Plaintiff Eco Farms Investments Holdings, LLC.  As discussed below, the quarterly payment was reduced to $10,267.60.

14.     The most important terms of the loan were the amount and total number of quarterly payments.  ECO's Chief Executive Officer entered the loan only because these payments, as expressly quoted by BALBOA, were competitive.  ECO calculated the amount that it would be paying back to BALBOA in excess of the principal amount financed and determined that the cost of the loan – whether termed interest, points, or fees – was acceptable.  The first page of the parties' Equipment Financing Agreement prominently displays 12 "Quarterly Payments" of $11,400.00 and a 1% "BLA" fee.

///

///

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

15.     BALBOA did not disclose that it intended to charge substantial sums of money for what BALBOA calls "prefund rent charges," nor that it intended to delay the "commencement" of the loan so it could maximize its own profit.  Had BALBOA disclosed these facts, ECO would not have moved forward because ECO was aware of other offers without such charges and practices.

16.     ECO did not realize it was being charged more than it had agreed to until an internal audit confirmed the total balance remaining, as quoted by BALBOA, did not account for the regular payments ECO had been making for almost a year.

17.     ECO brought this matter to BALBOA's attention via email and requested the remaining balance – which ECO assumed had simply been miscalculated – be adjusted to reflect the agreed-upon 12 quarterly payments. ECO contacted the BALBOA representative whom ECO had worked with to get the truck financed, Mr. Gray.  Mr. Gray was acting as BALBOA's agent and acting on behalf of BALBOA at all times relevant to this Complaint.

18.     In response to ECO pointing out the accounting error, Mr. Gray confirmed that BALBOA's records reflected ECO would be charged the agreed-upon 12 quarterly payments.  However, Mr. Gray explained the remaining balance was not an error, but that BALBOA considers the $46,660.52 it had already charged ECO to be "prefund rent charges."  BALBOA claims ECO must still make 12 more quarterly payments.

19.     In Mr. Gray's words, "you were charged rent from when you asked that we fund your vendor to the commencement date of the loan.  We were unable to commence the lease for nearly a year."  Mr. Gray erroneously uses the word "lease" even though ECO had obtained a loan to purchase the truck.  This mistake

6

is attributable to the fact that BALBOA often characterizes similar equipment

financing deals as leases.  Mr. Gray continued, "we cannot close out the lease

until the equipment is confirmed to be fully operational and accepted by you (the

verbal with my funding department)."  As will be shown, this is not only a

deceptive practice, but also an express breach of contract.

20.    ECO's CEO electronically signed the Equipment Financing

Agreement on April 14, 2017, prominently displaying an equipment cost of

$127,279.60 and 12 quarterly payments of $11,400.00.  Discussions with the

Freightliner dealer and changes to the order resulted in a reduced price.  ECO also

made a down payment.  Therefore, on May 2, 2017, ECO's CEO electronically

signed a "Change Addendum," prepared by BALBOA, reflecting an equipment

cost of $114,624.05 and reducing each of ECO's quarterly payments to

$10,267.60 (Exh. C hereto).

21.    BALBOA transmitted $114,624.05 to the Freightliner dealership on

May 11, 2017.  Freightliner delivered the truck to ECO on May 12, 2017, and the

truck was in the expected condition.

22.    Although payment had already been made, and delivery had already

been accepted 31 days earlier, ECO's CEO received a document from BALBOA

titled "Disbursement Authorization" on June 12, 2017 (Exh. D hereto).  ECO's

CEO signed and returned the document that same day.  The form document states,

"by executing this Delivery and Acceptance Certificate *the undersigned's non-*

*terminable installment payment obligation under the Agreement **will commence**.*"

(emphasis added).

///

///

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

23.    Although the heading reads "Disbursement Authorization," this document repeatedly refers to itself as "Delivery and Acceptance Certificate." BALBOA uses this as part of its scheme to maximize the payments it collects from its customers before "commencing" a loan, as is further described in paragraph 44 below.

24.    ECO needed customizations to fit ECO's business needs. Shortly after the Freightliner dealership delivered the truck to ECO on May 12, 2017, ECO sent the truck away to a third party for customization. The customizations enhanced the truck's economic value and functional utility. The terms of the agreement do not require BALBOA's approval of such improvements. BALBOA did not finance the cost of the customizations.

25.    ECO received an invoice from BALBOA dated June 19, 2017 for $5,131.79 (Exh. E hereto). ECO paid the invoice because ECO believed it was a partial or pro-rated payment of one of the 12 quarterly payments that had been agreed to. ECO received another invoice from BALBOA dated August 15, 2017, also for $5,131.79 (Exh. F hereto). Again, ECO did not protest and paid the invoice, believing it to be a partial or pro-rated portion of one of the agreed-upon quarterly payments.

26.    Upon information and belief, the amounts of and dates of these invoices are part of a scheme BALBOA perpetrated intending to defraud ECO. It was reasonable for ECO to assume these payments, totaling $10,263.58, constituted the first quarterly payment to BALBOA, which was scheduled to be $10,267.60. ECO's assumption was also reasonable because the first invoice was dated one week after ECO executed the "Disbursement Authorization"/"Delivery and Acceptance Certificate."

27.     As noted above, at BALBOA's suggestion, the agreement initially named ECO entity Eco Farms Sales, Inc.  ECO subsequently requested that BALBOA amend the agreement to name Eco Farms Investments Holdings, LLC in April 2017, and again in June 2017, but BALBOA declined to do so.  Several months later BALBOA agreed.  On January 30, 2018, ECO's CEO electronically signed a "Change Addendum" prepared by BALBOA, changing the name of the entity involved in the transaction to Plaintiff Eco Farms Investments Holdings, LLC.

28.     Within the next few weeks, ECO's financial officers noticed that statements and account balances from BALBOA were not properly calculated. ECO had already made regular payments to BALBOA totaling more than $38,000.00.  However, BALBOA's statements showed ECO owing a balance far higher than ECO could have owed.

29.     On March 15, 2018, ECO's CEO called Mr. Gray to inform BALBOA that its calculations were incorrect.  ECO assumed there had simply been an error transferring payment credits when the names were changed, which ECO had expressed concern about during the name change process.  Mr. Gray responded by email that "[a]ll payments previously collected will be applied to the current deal . . . . We simply used a change addendum to change the company name from 'ECO Farm Sales, Inc.' [sic] to 'ECO Farms Investments Holdings, LLC.'"

30.     This explanation did not account for the fact that BALBOA still showed ECO owing a balance far higher than could be correct.  When ECO pointed this out, Mr. Gray responded via email on March 16, 2018 as follows:

9

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

*Please review the documents and make sure you read all of the change addendums.  Loan amount is $114,624.05.  Quarterly Rent is $10,267.60.  All Rent previously paid is being applied to the current deal.  As stated, only thing changing is the name of the company.  All other document* [sic] *have remained the same since 6/12/17.*

31.    Based on this assurance from BALBOA, ECO continued paying BALBOA and assumed the next statement it received from BALBOA would be updated to reflect the correct remaining balance.  However, the next statement was still incorrect.  ECO attempted to get a straight answer, but was continually directed to speak with other BALBOA departments.

32.    On June 13, 2018, ECO's controller emailed Mr. Gray showing the proper accounting based on the contract and communications with BALBOA both before and after signing the contract:

**Contract: Total of 12 Payments at $10,267.60**

**$123,211.20**

**Less: Total of payments already made**

**($46,660.52)**

**Balance still owed BALBOA Capital**

**$76,550.68**

At that time, BALBOA contended that ECO still owed a balance of $123,211.20.

33.    In response, Mr. Gray claimed, "the payments made prior to commencement of the lease were prefund rent charges."  Once again, Mr. Gray referred to the purchase loan as a "lease" because BALBOA often characterizes its equipment funding transactions as leases.  Pursuant to BALBOA's "prefund rent"

10

1  scheme, all payments it had been regularly charging ECO were in fact for
2  "prefund rent" that BALBOA charges prior to the loan "commencing."
3  According to BALBOA, ECO's loan did not commence until June 2018 and ***ECO***
4  ***is now obligated to make 12 more quarterly payments.***

5       34.    Hordes of online complaints and a prior lawsuit before this Court
6  show that this deceptive and improper trick is actually BALBOA's business
7  model.  BALBOA intentionally misleads its customers by regularly charging
8  amounts which resemble the agreed-upon periodic payments.  However,
9  BALBOA knows it never intends to apply these payments to the loan or lease
10  balance.  BALBOA intentionally delays the "commencement" date of loans so it
11  can maximize the amount of "prefund rent" it collects.  Then, BALBOA assigns
12  its customers' payment obligations to other businesses.  For example, BALBOA
13  completed a $266 million securitization of equipment lease and loan backed notes
14  with Credit Suisse Securities and SunTrust Robinson Humphrey in early 2018.
15  BALBOA's "double dipping" is unfair, illegal, and should be disallowed.

16       35.    The Better Business Bureau ("BBB") and numerous small business
17  websites provide voluminous evidence of the widespread nature of BALBOA's
18  scheme.  For example, the BBB website shows this complaint from a small
19  business owner dated October 26, 2017:

20       *I dealt directly with VP Branch manager . . . .  I asked him*
21       *specific questions that he flat our* [sic] *lied about.  For instance,*
       *when we draw money on the lease as it may take 3 to 6 months*
22       *to pay all the vendor and the balance will be constantly*
       *changing, what payment do we pay?  He told me its* [sic] *just like*
23       *a line of credit and we pay interest only until the lease starts at*
       *the same rate we agreed on in the lease.  This was so far from*
24       *the truth, we had to pay what Balboa calls "prefund rent" from*
       *5/1/2017 until 8/04/2017 which was $12,737.92.  8/04/2017 was*
25

11

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

*the date all equipment was paid and signed off on. Then we had to pay what they call "prorated" rent of $11,082.22 for another 3 months until 11/01/2017 which they say is the base term and the start of the lease. At the base term the first payment will be made that will actually count as 1 of the payments on the lease.*

And another small business owner complaint dated August 9, 2017 reads:

*They are charging us more than what is in the agreement for a lease we have with them. The contract specifies 16 total payments, but they took a full payment and called it a prorated payment retroactively and are saying prorated payments do not apply towards the 16 total payments. That prorated . . . payment would bring us to the total 16 payments. We paid that 'prorated' payment in full. They sold the lease to another company who collected 14 of the total payments, Balboa took the first two payments. It is incorrect and unfair that they retroactively claimed that one of our two payments to Balboa was a prorated payment.* (ellipsis in original)

And another dated November 30, 2016:

*We used Balboa Capital for equipment purchase. The sale rep offered a 3-year 12 quarterly payment term loan. The contract was signed by me on 9/30/2016 along with a deposit of $2,930 (the 12th and final quarterly payment). Balboa funded the loan on 10/03/2016. On 10/14/2016, I received an invoice . . . for $3,018 that consisted: Prorated Rent 10/03/16-1/1/17: $2,930 and UCC: $79. We were confused by the prorated "rent", which should have been the 1st quarter payment. Balboa customer service pointed out the agreement actually started on 01/01/17, and that the 1st invoice was for "rent" until loan started . . . . The service rep reluctantly checked the account then cited that the agreement started on 1/1/17. I let her know that the document I signed had a blank commencement date. She basically blamed me for signing the agreement and that it was my stupidity that I let them put in any commencement date when they countered* [sic] *signed.* (first ellipsis in original)

36.    The above-quoted complaints are just a small sample of complaints from BALBOA customers.  However, this small sample shows that ECO's experience is not an anomaly, but the way BALBOA treats its customers. BALBOA should not be allowed to continue utilizing misleading terms and conditions, with which BALBOA never intends to comply.

37.    ECO pointed out that conversations with BALBOA made it clear the contract "commenced" when BALBOA paid the Freightliner dealership on ECO's behalf on May 11, 2017 or the next day upon delivery.  This is typically how loan agreements work in the commercial financing industry.  However, Mr. Gray informed ECO in an email that BALBOA's business practice is to not "close out the lease until" its customers do a "verbal" with BALBOA's "funding department."  There is no mention of any "verbal" in the agreement.  Any claim that BALBOA delayed executing the agreement based upon discretion it grants itself is foreclosed by the express terms of the agreement stating, "upon [BALBOA's] execution, [BALBOA] shall fund the Equipment Cost."

38.    ECO would not have done business with BALBOA, and would have selected one of its many competitors, had BALBOA disclosed its intent. Moreover, BALBOA's claim that it requires "verbal" confirmations to commence a loan cannot serve any purpose other than to delay the commencement date.  The terms of BALBOA's form Equipment Financing Agreement and Hold Harmless Letter Agreement contain buyer beware provisions that make the debtor's payment obligations non-cancelable upon execution of the contract.  Thus, BALBOA shields itself from any customer dissatisfaction with the equipment and its terms require all claims to be asserted against the vendors of such equipment.

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

39.    BALBOA also uses misleading terms in its quotes, communications, and contracts.  Upon closer review, ECO now sees that BALBOA unilaterally altered the term "Quarterly *Payments*" appearing on the initial Equipment Finance Agreement to "Quarterly *Rent*" in subsequent documents and communications. The first page of the two-page Equipment Financing Agreement (Exh. A hereto) references "Quarterly Payments" at least nine times, including in all capital letters in a prominently disclosed loan schedule of "12 QUARTERLY PAYMENTS." The two-page document does not contain the word "rent."

40.    ECO received the first Change Addendum from BALBOA (Exh. C hereto) almost a month after executing the document expressly referencing Quarterly *Payments*.  This Change Addendum, which as far as ECO was concerned merely reflected the reduced price of the Freightliner truck, contains the term Quarterly *Rent*.  ECO did not question this change in wording because equipment leasing is very common and it would not be out of the ordinary for BALBOA to use the term "rent."  This tactic is misleading and deceptive and may be part of BALBOA's illicit scheme.  Any claim by BALBOA that this unilateral change in the word used subsequent to entering the contract has any effect on the terms of the agreement is baseless, misleading, and in bad faith.

41.    This is especially misleading because BALBOA represented to ECO at all times that ECO is the truck's legal owner.  This is also expressly stated in the agreement.  "Vehicle Addendum 1-A," (Exh. G hereto) attached to and made a part of the Equipment Financing Agreement, states "Debtor is the owner of the Equipment."  This is also contemplated in the Equipment Financing Agreement where BALBOA promises to release its security interest in the truck once ECO makes all quarterly payments.

14

42.    BALBOA asserts that this "prefund rent" scheme is allowed under the contract and outlined in section 3, paragraph 3 of its form "Hold Harmless Letter Agreement" (Exh. B hereto).  BALBOA is mistaken.  This paragraph states in its entirety:

> 3. Notwithstanding the foregoing, if You do not sign, date and return Our Delivery and Acceptance Certificate within thirty (30) days of Our first payment to Your supplier(s), We may, at Our sole option and discretion, pursue any one of the following options:
> (1) extend the time for You to sign, date and return a Delivery and Acceptance Certificate; or (2) commence the term of the EFA and payments will become due as described in the EFA; or (3) decide not to commence the term of the EFA and instead cancel or terminate the EFA. If We decide to cancel or terminate the EFA, You agree to pay Us all amounts We have paid to the supplier(s), plus all prefund rent, and late charges at the rate of 18% or if 18% is not allowed by law, the maximum amount which is allowed by law on any payments that We made, within five (5) days of Our written demand for repayment. Thus, Our option is to extend the time for You to sign, date and return our Delivery and Acceptance Certificate; or make the EFA non-cancellable, irrevocable, and require You to pay all sums due under the EFA; or cancel or terminate the EFA and obtain reimbursement for the sums set forth herein.
> . In addition, You shall pay Us prefund rent from the date Your supplier(s) are paid based upon the aggregate amount of Our payments to Your supplier(s) multiplied by the daily equivalent EFA rate set forth in the EFA. The daily equivalent EFA rate is equal to one-thirtieth (1/30) of the quotient that results when dividing the monthly rental payment of Your EFA by the aggregate invoice amount. Prefund rent which is not paid within five (5) days of its due date shall be subject to a late charge equal to 18% of each such delayed payment or any other such maximum amount allowed by law in a lesser sum. Failure to pay prefund rent is a breach of this Agreement. Once all of the Equipment has been delivered and installed, You shall sign and date and return our Delivery and Acceptance Certificate. Prefund rent shall continue to accrue from the date Your supplier(s) are paid to the date of the execution of the Delivery and Acceptance Certificate or thirty (30) days, whichever period is shorter, as is discussed above.

43.    At most, BALBOA's terms and conditions purported to allow BALBOA to charge "prefund rent" for 30 days starting with the day it paid the Freightliner dealership, May 11, 2017 in ECO's case.  Upon information and belief, BALBOA intentionally delayed delivering the form Disbursement Authorization/Delivery and Acceptance Certificate to ECO until June 12, 2017 so that BALBOA could maximize the "prefund rent" it claimed from ECO.  There is no valid reason for such a delay.  And BALBOA certainly did not have the right to collect almost a year's worth of payments from ECO in the name of "rent." BALBOA should be required to return all "rent" it has collected.

44.    BALBOA also charged ECO undisclosed fees.  On its invoice dated April 4, 2018 (Exh. H hereto), BALBOA charged a $172 "UCC" fee, a $205 "Inspection" fee, a $1,146.24 "Documentation" fee, a $350 "Titling" fee, and a

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

$30 "Wiring" fee. None of these fees are disclosed in the documents that make up the parties' contract. Further, most of these "fees" are grossly excessive and bear no resemblance to BALBOA's actual costs. If BALBOA claims these fees are allowed as the "1% BLA" fee mentioned in the contract, BALBOA must return all amounts collected in fees greater than $1,146.24, or 1% of the amount BALBOA loaned. BALBOA should not be allowed to charge these plainly excessive fees.

45.    BALBOA's calculations are also in error. The April 4, 2018 invoice contains a charge of $5,716.27 for "Prorated Rnt: 03/01/18–03/27/18." This is despite the fact that ECO had already paid a January 12, 2018 invoice charge of $5,131.79 for "Prorated Rnt: 01/10/18–03/11/18." Thus, BALBOA's miscalculation resulted in it charging ECO $5,716.27 for 16 days of "rent." The April 4 invoice also contained a $10,153.51 charge for "Prorated Rnt: 03/27/18–06/24/18." There is no valid explanation for such charges. BALBOA's automated systems have been misprogrammed to assess such illicit charges.

46.    After speaking with Mr. David White, identified as BALBOA's Vice President of Sales, who refused to provide ECO any relief for its complaints, ECO decided to implore Mr. Gray for help one last time. On June 19, 2018, ECO's CEO emailed Mr. Gray asking that ECO's payments to date be applied to the loan balance. ECO also informed Mr. Gray that ECO would be left with no choice but to file suit should BALBOA refuse. On June 20, 2018, Mr. Gray responded by email that there was "no way for me to apply the payments you have made to your quarterly payments," prompting the filing of this lawsuit.

## CLASS ALLEGATIONS

47.    ECO bring this class action on behalf of itself and all persons or entities similarly situated. ECO seeks to represent the following Classes:

16

All United States persons or entities that paid BALBOA unauthorized "rent" for periods after funding occurred but before BALBOA claimed its loan commenced during the applicable statute of limitations periods prior to the filing of this action and running through the trial of this matter ("Rent Class").

All United States persons or entities that paid BALBOA "prefund rent" based on BALBOA's failure to deliver a Disbursement Authorization/Delivery and Acceptance Certificate at the time BALBOA funded the purchase of equipment during the applicable statute of limitations periods prior to the filing of this action and running through the trial of this matter ("Delay Class").

All United States persons or entities BALBOA charged an undisclosed fee, or fees totaling more than the stated "BLA" fee, in the agreement during the applicable statute of limitations periods prior to the filing of this action and running through the trial of this matter ("Fee Class").

48.    This Court is especially well suited to resolve claims asserted on behalf of these classes.  Indeed, this Court has already heard a case complaining of BALBOA's conduct substantially similar to that described herein.

49.    ECO reserves the right to modify or amend the definition of the proposed Classes, or add other proposed classes or subclasses, before the Court determines whether certification is appropriate and as the Court may otherwise allow.

50.    Excluded from the Classes are ECO's counsel; BALBOA, its parents, subsidiaries, affiliates, officers, and directors; any entity in which BALBOA has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

///

///

17

51.    The proposed Classes meet all requirements for class certification. The members of the Classes are so numerous that joinder is impractical.  The Classes consist of, at the very least, hundreds of members and the identity of those persons and entities is within the knowledge of BALBOA and can be ascertained by resort to BALBOA's records.

52.    The claims of the representative Plaintiff are typical of the claims of the Classes.  ECO, like all other members, was victimized by BALBOA's improper practices.  Moreover, ECO, like all other members, has suffered pecuniary harm as a result of BALBOA's misconduct.  Furthermore, the factual basis of BALBOA's misconduct is common to members of the Classes and represents a common thread of conduct resulting in injury to all members of the Classes.

53.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

54.    Among the questions of law and fact common to the Classes are whether BALBOA:

a.    Is entitled to collect any "prefund rent" or "prorated rent" from its customers based upon its form contracts and common practices;

b.    Misleads customers by quoting a total number of payments that do not reflect the true number and amount of payments that result from BALBOA's practices;

c.    Knows the number of payments charged is not what customers agree to;

///

18

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

d.    Intentionally delays "commencement" of loans beyond the ordinary industry practice with the goal of maximizing profit;

e.    Changes the use of the word "payment" to the word "rent" subsequent to customers entering agreements with BALBOA in an attempt to unilaterally change the conditions of agreements; and

f.    Charges undisclosed fees or fees greater than allowed by the contract.

55.    Other questions of law and fact common to the Classes include:

a.    The proper method or methods by which to measure damages; and

b.    The equitable relief to which the Classes are entitled.

56.    ECO's claims are typical of the claims of other members of the Classes in that they arise out of the same wrongful policies and practices.  ECO has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

57.    ECO is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, ECO is an adequate representative and will fairly and adequately protect the interests of the Classes.

58.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to BALBOA's financial resources, most Class members could not afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class

///

19

action, the Class members will be unable to obtain redress for their losses and BALBOA's misconduct will have occurred, and continue to occur, without remedy.

59.    Even if Class members themselves could afford such individual litigation, the court system could not.  Individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

60.    The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for BALBOA.

61.    BALBOA refuses to correct its conduct and such inaction is generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole. Specifically, BALBOA continues to knowingly mislead and overcharge the Classes.  Class-wide declaratory and/or injunctive relief is appropriate to put an end to these illicit practices.

///

///

///

///

20

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

# FIRST CAUSE OF ACTION

## (Tortious Fraud and Intentional Deceit – Cal. Civ. Code § 1709, *et seq.*)

## On Behalf of the Rent Class

62.     ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

63.     BALBOA presented the terms of its Equipment Financing Agreement to ECO and members of the Rent Class knowing the terms under each such agreement were tortiously and intentionally deceitful.  BALBOA's form Equipment Financing Agreement prominently displays the equipment cost BALBOA will be advancing, the dollar amount of each quarterly payment, and the number of quarterly payments due.  Neither the Equipment Financing Agreement nor any of BALBOA's form documents authorized BALBOA to make periodic charges of amounts almost equaling the agreed-to quarterly payments, in addition to the number of quarterly payments that had been expressly agreed to. This is because BALBOA intentionally concealed the true nature of these charges.

64.     BALBOA intentionally did not disclose to ECO and members of the Rent Class its intention to charge payments that BALBOA did not consider part of the disclosed total number of quarterly payments contained in the loan schedule. Because BALBOA failed to disclose the existence of these charges, the loan schedules presented by BALBOA to ECO and the Rent Class were false. BALBOA's fraud unilaterally changed the terms of the loan to require payments greater than those agreed to.

65.     BALBOA knowingly concealed its intentions to charge these additional payments in order to induce ECO and members of the Rent Class into entering equipment financing agreements.

66.    ECO and members of the Rent Class justifiably relied on BALBOA's representations regarding the loan amounts made in the loan schedules when entering into the equipment financing agreements.  ECO and members of the Rent Class relied on BALBOA's representation as to the total cost of each loan, the payment terms, and the loan schedules.  Had ECO and members of the Rent Class known that the terms and loan schedules presented by BALBOA for each loan were not accurate and that BALBOA would charge more money than it disclosed, ECO and members of the Rent Class would not have entered into equipment financing agreements with BALBOA.

67.    Any position by BALBOA that the extra quarterly charges were permissible under the pro-rated rent or prefund rent provisions in BALBOA's form documents is without merit; and such an alleged interpretation is both unwarranted and tortiously and intentionally deceitful.

68.    BALBOA's misrepresentations have caused ECO damages in excess of $46,000.  Damages suffered by the Rent Class will be proven using BALBOA's books and records and other Court-approved methods.  Based upon the relevant class period and the size of BALBOA's financing business, it is likely to be at least millions of dollars.

## SECOND CAUSE OF ACTION

### (Actual Fraud – Cal. Civ. Code § 1572, *et seq.*)

### On Behalf of the Rent Class

69.    ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

///

///

70.     BALBOA presented the terms of its Equipment Financing Agreement to ECO and members of the Rent Class knowing the terms under each such agreement were fraudulent.  BALBOA's form Equipment Financing Agreement prominently displays the equipment cost BALBOA will be advancing, the dollar amount of each quarterly payment, and the number of quarterly payments due as described in Paragraphs 13-14 and 20 above.  Neither the Equipment Financing Agreement nor any of BALBOA's form documents authorized BALBOA to make periodic charges of amounts almost equaling the agreed to quarterly payments as described in Paragraphs 26 and 27, in addition to the number of quarterly payments that had been expressly agreed to.  This is because BALBOA intentionally concealed the true nature of these charges.  BALBOA also intentionally and unreasonably delayed "commencement" of the loan through tactics such as requiring ECO to give "verbal confirmation" not called for in the agreement nor for any legitimate purpose, as described above.

71.     BALBOA intentionally did not disclose to ECO and members of the Class its intention to charge payments that BALBOA did not consider part of the disclosed total number of quarterly payments contained in the loan schedule.  Because BALBOA failed to disclose the existence of these charges, the loan schedules presented by BALBOA to ECO and the Rent Class were false.  BALBOA's agent knowingly gave ECO false information when he stated, "all payments previously collected will be applied to the current deal" on March 15, 2017 and then reaffirmed that misrepresentation the next day, as described in Paragraphs 29 and 30 above.  BALBOA's fraud unilaterally changed the terms of the loan to require payments greater than those agreed to.

72.    Upon information and belief, BALBOA knowingly concealed its intentions to charge these additional payments in order to induce ECO and members of the Rent Class into entering equipment financing agreements.  For example, BALBOA does not use the term "rent" anywhere on its two-page Equipment Financing Agreement yet prominently displays the number of "Quarterly Payments" agreed to, as described in Paragraphs 14, 20, and 39.

73.    As alleged in Paragraphs 14-16, 20, 25–26 and 37-41 above, ECO and members of the Rent Class justifiably relied on BALBOA's representations regarding the loan amounts made in the loan schedules when entering into the equipment financing agreements.  ECO and members of the Rent Class relied on BALBOA's representation as to the total cost of each loan, the payment terms, and the loan schedules.  Had ECO and members of the Rent Class known that the terms and loan schedules presented by BALBOA for each loan were not accurate and that BALBOA would charge more money than it disclosed, ECO and members of the Rent Class would not have entered into equipment financing agreements with BALBOA.

74.    Any position by BALBOA that the extra quarterly charges were permissible under the pro-rated rent or prefund rent provisions in BALBOA's form documents is without merit; and such an alleged interpretation is both unwarranted and fraudulent.

75.    BALBOA's fraudulent scheme has caused ECO damages in excess of $46,000 as shown by the calculations in Paragraph 32 above.  Damages suffered by the Rent Class will be proven using BALBOA's books and records and other Court-approved methods.  Based upon the relevant class period and size of BALBOA's financing business, it is likely to be at least millions of dollars.

24

## THIRD CAUSE OF ACTION

**(Negligent Misrepresentation – Cal. Civ. Code § 1572, *et seq*.)**

**On Behalf of The Rent Class**

76.    ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

77.    BALBOA's form Equipment Financing Agreement prominently displays the equipment cost BALBOA will be advancing, the dollar amount of each quarterly payment, and the number of quarterly payments due.  Neither the Equipment Financing Agreement nor any of BALBOA's form documents authorized BALBOA to make quarterly charges of amounts almost equaling the agreed to quarterly payments, in addition to the number of quarterly payments that had been expressly agreed to.  Also, BALBOA's representatives failed to adequately disclose how BALBOA classified the amounts charged to ECO.

78.    BALBOA failed to disclose its intention to charge payments that BALBOA did not consider part of the agreed upon total number of quarterly payments contained in the loan schedule.  Because BALBOA failed to disclose the nature of these charges, the payment schedules presented by BALBOA to ECO and the Rent Class were false.  BALBOA's actions or inaction unilaterally changed the terms of the loan to require payments greater than those agreed to.

79.    Upon information and belief, BALBOA misrepresented its intentions to charge these additional payments in order to induce ECO and members of the Class into entering equipment financing agreements.

80.    ECO and members of the Rent Class relied on BALBOA's representations regarding the loan amounts made in the loan schedules when entering into the equipment financing agreements.  Had ECO and members of the

Rent Class known that the terms and loan schedules presented by BALBOA for each loan were not accurate and that BALBOA would charge more money than it disclosed, ECO and members of the Rent Class would not have entered into equipment financing agreements with BALBOA.

81.   Any position by BALBOA that the extra quarterly charges were permissible under the pro-rated rent or prefund rent provisions in BALBOA's form documents is without merit; and such an alleged interpretation is both unwarranted and a misrepresentation.

82.   BALBOA's misrepresentations have caused ECO damages in excess of $46,000.  Damages suffered by the Rent Class will be proven using BALBOA's books and records and other Court-approved methods.  Based upon the relevant class period and size of BALBOA's financing business, it is likely to be at least millions of dollars.

### On Behalf of the Fee Class

83.   ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

84.   BALBOA's form Equipment Financing Agreement prominently displays a "BLA" fee.  Neither the Equipment Financing Agreement nor any of BALBOA's form documents authorized BALBOA to charge fees in excess of the stated amount of the BLA fee.  Also, BALBOA representatives fail to disclose that BALBOA fully intends to charge additional fees in excess of the stated BLA fee.

85.   BALBOA failed to disclose its intention to charge fees in addition to the stated BLA loan fee.  Because BALBOA failed to disclose the existence of these fees, the terms presented by BALBOA to ECO and the Fee Class were false.

BALBOA's actions or inaction unilaterally changed the terms of the loan to require payments greater than those agreed to.

86.    Upon information and belief, BALBOA misrepresented its intentions to charge these additional fees in order to induce ECO and members of the Class into entering equipment financing agreements.

87.    ECO and members of the Fee Class relied on BALBOA's representations regarding the fees disclosed when entering into the equipment financing agreements.  Had ECO and members of the Fee Class known that the terms presented by BALBOA for each loan were not accurate and that BALBOA would charge more fees than it disclosed, ECO and members of the Fee Class would not have entered into equipment financing agreements with BALBOA.

88.    Any position by BALBOA that the extra fees were permissible under the BLA loan fee in BALBOA's form documents is without merit; and such an alleged interpretation is both unwarranted and a misrepresentation.

89.    BALBOA's misrepresentations have caused ECO damages of at least $777.  Damages suffered by the Fee Class will be proven using BALBOA's books and records and other Court-approved methods.  Based upon the relevant class period and size of BALBOA's financing business, it is likely to be at least millions of dollars.

## FOURTH CAUSE OF ACTION

**(Improper Business Practices –**

**Business and Professions Code § 17200, *et seq.*)**

**On Behalf of the Rent Class**

90.    ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

91.     Pursuant to BALBOA's form Equipment Finance Agreement, California law governs the parties' relationship.

92.     California Business and Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices."

93.     BALBOA's business practices are unlawful under Business and Professions Code § 17200, *et seq.*, by virtue of, among other things, BALBOA's violation of Financial Code § 22161 which prohibits making "a materially false or misleading statement or representation to a borrower about the terms or conditions of that borrower's loan, when making or brokering the loan," and BALBOA's breach of the covenant of good faith and fair dealing (as set forth below).

94.     BALBOA's business practices are unfair under Business and Professions Code § 17200, *et seq.*, because it has misrepresented the number of payments it intends to charge, makes charges in such a way to disguise the excessive charges, and delays "commencing" a loan through BALBOA's own actions or inaction.

95.     BALBOA's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to ECO and the Rent Class.

96.     As a result of BALBOA's unlawful and unfair business practices, ECO and the members of the Rent Class are entitled to an order, pursuant to California Business and Professions Code § 17023, enjoining such future conduct, and such other orders and judgments that may be necessary to restore to the class members all ill-gotten monies obtained from them by BALBOA as a result of the above-described conduct.

*///*

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

**On Behalf of the Delay Class**

97.    ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

98.    Pursuant to BALBOA's form Equipment Finance Agreement, California law governs the parties' relationship.

99.    California Business and Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices."

100.    BALBOA's business practices are unlawful under Business and Professions Code § 17200, *et seq.*, by virtue of, among other things, BALBOA's violation of Financial Code § 22161 which prohibits "knowingly misrepresent[ing], circumvent[ing], or conceal[ing], through subterfuge or device, any material aspect or information" and BALBOA's breach of the covenant of good faith and fair dealing (as set forth below).

101.    BALBOA's business practices are unfair under Business and Professions Code § 17200, *et seq.*, because it delays "commencement" of its loans (including by delaying delivery of form documents whereby customers acknowledge that the funding has occurred), for no reason other than to maximize its own profit.

102.    BALBOA's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to ECO and the Delay Class.

103.    As a result of BALBOA's unlawful and unfair business practices, ECO and the members of the Delay Class are entitled to an order, pursuant to California Business and Professions Code § 17023, enjoining such future conduct,

///

1   and such other orders and judgments that may be necessary to restore to the

2   members of the Classes all ill-gotten monies obtained from them by BALBOA as

3   a result of the above-described conduct.

4                        **On Behalf of the Fee Class**

5          104.   ECO hereby incorporates all paragraphs of this Complaint (above and

6   below) in this Cause of Action.

7          105.   Pursuant to BALBOA's form Equipment Finance Agreement,

8   California law governs the parties' relationship.

9          106.   California Business and Professions Code § 17200 provides that

10  unfair competition shall mean and include "all unlawful, unfair or fraudulent

11  business practices."

12         107.   BALBOA's business practices are unlawful under Business and

13  Professions Code § 17200, *et seq.*, by virtue of, among other things, BALBOA's

14  violation of Financial Code § 22161 which prohibits making "a materially false or

15  misleading statement or representation to a borrower about the terms or conditions

16  of that borrower's loan, when making or brokering the loan," and BALBOA's

17  breach of the covenant of good faith and fair dealing (as set forth below).

18         108.   BALBOA's business practices are unfair under Business and

19  Professions Code § 17200, *et seq.*, because it has misrepresented or not disclosed

20  the fees it intends to charge and charges fees greater than allowed under the its

21  contracts with customers.

22         109.   BALBOA's conduct is immoral, unethical, oppressive, unscrupulous,

23  and substantially injurious to ECO and the Fee Class.

24  ///

25  ///

**CLASS ACTION COMPLAINT**
CASE NO.: 18-cv-1339

110.   As a result of BALBOA's unlawful and unfair business practices, ECO and the members of the Fee Class are entitled to an order, pursuant to California Business and Professions Code § 17023, enjoining such future conduct, and such other orders and judgments that may be necessary to restore to the class members all ill-gotten monies obtained from them by BALBOA as a result of the above-described conduct.

## FIFTH CAUSE OF ACTION

### (Breach of Contract)

### On Behalf of the Rent Class

111.   ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

112.   ECO and the Rent Class entered into written equipment financing agreements with BALBOA.  These agreements contained loan schedules requiring a set number and amount of payments.

113.   ECO and members of the Rent Class have performed, or substantially performed, their obligations under the respective agreements.

114.   BALBOA breached its contracts with ECO and members of the Rent Class by charging sums greater than allowed under the express terms of the contracts.  For example, BALBOA charged ECO more than $40,000 prior to "commencing" the loan, despite the fact that the express terms of their contract allow a far lower amount, if any.

115.   Any position by BALBOA that the extra periodic charges were permissible under the pro-rated rent or prefund rent provisions in BALBOA's form documents is without merit; and such an alleged interpretation is both unwarranted and a breach of contract.

116.   BALBOA's breach has caused ECO damages in excess of $46,000. Damages suffered by the Rent Class will be proven using BALBOA's books and records and other Court-approved methods.  Based upon the relevant class period and size of BALBOA's financing business, it is likely to be at least millions of dollars.

### On Behalf of the Fee Class

117.   ECO hereby incorporate all paragraphs of this Complaint (above and below) in this Cause of Action.

118.   ECO and the Fee Class entered into written equipment financing agreements with BALBOA.  These agreements contained terms allowing BALBOA to charge only 1% of the amount loaned as a fee.

119.   ECO and members of the Fee Class have performed, or substantially performed, their obligations under the respective agreements.

120.   BALBOA breached its contracts with ECO and members of the Fee Class by charging fees greater than allowed under the express terms of the contracts.  For example, BALBOA charged ECO $777 more in fees than allowed by the contract.

121.   Any position by BALBOA that the extra fees were permissible under the 1% BLA loan fee in BALBOA's form documents is without merit; and such an alleged interpretation is both unwarranted and a misrepresentation.

122.   BALBOA's breach has caused ECO damages of $777.  Damages suffered by the Fee Class will be proven using BALBOA's books and records and other Court-approved methods.  Based upon the relevant class period and size of BALBOA's financing business, it is likely to be at least millions of dollars.

///

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

# SIXTH CAUSE OF ACTION

## (Breach of the Covenant of Good Faith and Fair Dealing)

## On Behalf of the Rent Class

123.   ECO hereby incorporate all paragraphs of this Complaint (above and below) in this Cause of Action.

124.   California law implies in every contract a covenant of good faith and fair dealing.  Broadly stated, that covenant requires that neither party do anything to deprive the other of the benefits of the agreement.  A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable.

125.   Breach of a specific provision of the contract is not a prerequisite. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract.  Nor is it necessary that the party's conduct be dishonest.  Dishonesty presupposes subjective immorality; the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.

126.   BALBOA has breached the covenant of good faith and fair dealing through its practices as alleged herein, including but not limited to, its practice of charging regular payments that result in a higher number and total amount of payments than quoted and agreed upon.

127.   BALBOA's delay of a loan's commencement date to significantly increase the number and amount of payments it deducts from customers' bank accounts is not a reasonable use of any discretion it is afforded under their form agreement.

///

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

128.    ECO and members of the Rent Class sustained damages as a result of BALBOA's breaches of the covenant of good faith and fair dealing.  Moreover, because BALBOA's actions were oppressive and malicious (including as reflected in BALBOA's admission that its charges are not in error, but rather as the result of a scheme not disclosed to customers), ECO and the members of the Rent Class are entitled to an award of punitive damages.

### On Behalf of the Delay Class

129.    ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

130.    California law implies in every contract a covenant of good faith and fair dealing.  Broadly stated, that covenant requires that neither party do anything to deprive the other of the benefits of the agreement.  A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable.

131.    Breach of a specific provision of the contract is not a prerequisite. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract.  Nor is it necessary that the party's conduct be dishonest.  Dishonesty presupposes subjective immorality; the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.

132.    BALBOA has breached the covenant of good faith and fair dealing through its practices as alleged herein, including, but not limited to, its practice of delaying delivery of form documents whereby customers acknowledge that the funding has occurred.   By doing so, BALBOA collects additional profit to which

///

34

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

it is not entitled and for which it provides no value or service.  BALBOA's improper delay merely affords it an excuse to seize additional funds from customer accounts.

133.   BALBOA's delay in delivering form documents to its customers is not a reasonable use of any discretion it is afforded under its form agreements.

### On Behalf of the Fee Class

134.   ECO hereby incorporates all paragraphs of this Complaint (above and below) in this Cause of Action.

135.   California law implies in every contract a covenant of good faith and fair dealing.  Broadly stated, that covenant requires that neither party do anything to deprive the other of the benefits of the agreement.  A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable.

136.   Breach of a specific provision of the contract is not a prerequisite. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract.  Nor is it necessary that the party's conduct be dishonest.  Dishonesty presupposes subjective immorality; the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive.

137.   BALBOA has breached the covenant of good faith and fair dealing through its practices as alleged herein, including but not limited to, its practice of charging fees greater than those allowed by its contracts with customers.

138.   BALBOA's addition of fees subsequent to entering contracts with its customers is not a reasonable use of any discretion it is afforded under its form agreement.

1    139.   ECO and members of the Fee Class sustained damages as a result of

2    BALBOA's breaches of the covenant of good faith and fair dealing.  Moreover,

3    because BALBOA's actions were oppressive and malicious (including as reflected

4    in BALBOA's admission that its charges are not in error, but rather as the result of

5    a scheme not disclosed to customers), ECO and the members of the Fee Class are

6    entitled to an award of punitive damages.

## PRAYER

7         Wherefore, ECO, on behalf of itself and the other members of the Classes,

8    request that the Court award relief against BALBOA including as follows:

9         a.  An order certifying the Rent Class, the Delay Class, and the

10            Fee Class and designating ECO FARMS INVESTMENTS

11            HOLDINGS, LLC as the Class Representative and its

12            undersigned counsel as Class Counsel;

13        b.  Awarding ECO and the members of the proposed Classes

14            damages and punitive damages;

15        c.  Awarding restitution of all amounts that BALBOA improperly

16            obtained from ECO and the members of the Classes as a result

17            of its unlawful and unfair business practices;

18        d.  Awarding declaratory and injunctive relief as permitted by law

19            or equity, including:  enjoining BALBOA from continuing the

20            unlawful practices as set forth herein, and directing BALBOA

21            to identify, with Court supervision, all victims of the

22            misconduct and to compensate the victims with the requisite

23            funds;

///

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339

e.  Awarding ECO and the other members of the Classes pre-
judgment and post-judgment interest;

f.  Awarding attorneys' fees and costs as authorized by statute
including Code of Civil Procedure § 1021.5; and

g.  For such other and further relief as the Court may deem
necessary or appropriate.

## DEMAND FOR JURY TRIAL

ECO hereby demands a trial by jury of all claims so triable.

DATED:  August 1, 2018                     s/Deval R. Zaveri
                                           Deval R. Zaveri, Esq.

                                           Deval R. Zaveri (CA 213501)
                                           James A. Tabb (CA 208188)
                                           ZAVERI TABB, APC
                                           402 West Broadway, Suite 1950
                                           San Diego, California 92101
                                           Tel:  (619) 831-6988
                                           Fax: (619) 239-7800
                                           dev@zaveritabb.com
                                           jimmy@zaveritabb.com

                                           Matthew C. Klase (CA 221276)
                                           WEBB, KLASE & LEMOND, LLC
                                           1900 The Exchange, S.E., Suite 480
                                           Atlanta, Georgia 30339
                                           Tel:  (770) 444-0998
                                           Fax: (770) 217-9950
                                           Matt@WebbLLC.com

                                           *Attorneys for Plaintiff ECO FARMS*
                                           *INVESTMENTS HOLDINGS, LLC,*
                                           *and the Putative Classes*

37

CLASS ACTION COMPLAINT
CASE NO.: 18-cv-1339